UNITED SHOE MACH. CO. v. THOMAS G. PLANT CO. et al.

(Circuit Court, D. Massachusetts.   October 1, 1902.)

No. 1,113.

1. PATENTS—INFRINGEMENT—HEEL-NAILING MACHINE.
   The Raymond patent, No. 619,707, for a heel-nailing machine for attaching the heels on boots and shoes, construed, and *held* not anticipated, and valid; also infringed as to claims 23, 24, 42, 43, and 44.

In Equity.  Suit for infringement of letters patent No. 619,707 for a heel-attaching machine, granted to Freeborn F. Raymond February 14, 1899.

Elmer P. Howe and Richardson, Herrick & Weave, for complainant.

J. S. Rusk, for defendants.

COLT, Circuit Judge.  This bill in equity is brought for infringement of the Raymond patent, No. 619,707, dated February 14, 1899, for an improvement in machines for attaching a heel by nails to the heel-seat of a shoe. The heel is commonly made up of two parts,—the heel-blank, composed of several layers of leather pressed together, and a single piece of leather called the "top-lift," which is spanked on to the projecting ends of the nails on the bottom of the heel, so that the nails do not show in the finished heel. The heel-blank is often "loaded" in a separate machine, which means that the holes are driven

through it, and the nails driven part way into these holes, with their ends projecting. Prior to the patent in suit, there were two types of heeling machine in use, known, respectively, as the "McKay Machine" and the "National Machine." In the McKay machine the shoe was placed in an upright position on the jack with the heel-seat above the heel-blank and heel-block. A loaded heel-blank, with its projecting nails, was placed on the heel-block, which had a series of holes to receive the nails. In the lower part of the heel-block was an upright nail driver projecting from a driver-bed. The heel-block was held away from this bed by a spring. The shoe was brought down upon the heel, thereby forcing the heel and heel-block downward against the pressure of the spring, so that the driver forced the nails through the heel-blank and into the sole of the shoe. The shoe was then carried up again with the heel attached thereto, leaving the ends of the nails projecting. A plate was then turned over the surface of the heel-block, and the top-lift was applied to the plate. The heel was then brought down upon the top-lift, whereby it was spanked into place upon the projecting nail ends. In the National machine the shoe was held upside down upon a jack, and an unloaded heel-blank was placed over the heel-seat. This machine was organized with a rotary head above the heel-seat, having projecting arms which carried the awls, nail drivers, and top-lift spanker. After the heel-blank had been placed over the heel-seat, a templet containing a series of holes was brought over the heel-blank, and a set of awls upon one arm of the rotary head descended through the templet and made the holes in the heel-blank. The awls then ascended, and the nails were dropped into the templet holes. A gang of drivers upon another arm of the rotary head then descended, and drove the nails through the heel-blank and into the heel-seat. The drivers were then retracted, and the spanker arm carrying the top-lift descended, and spanked the top-lift on to the projecting ends of the nails. In the Raymond machine, covered by the patent in suit, the jacked shoe is placed upside down, and the heel-blank is applied to the heel-seat from above. The machine has a rotary head having one or more pairs of arms, one arm of each pair being furnished with drivers and a heel-block, which are substantially like the old McKay machine, and the other arm with the top-lift carrier and spanker. A loaded heel-blank is placed bottom down on the heel-block while the arm is in its upward position. The arm then carries around the heel-blank until it is over the heel-seat, bottom up, whereupon the nail-driving operation takes place. The rotary head is again rotated, and the next arm carries around the top-lift, and then spanks it on. In the preferred form set forth in the patent the machine has six arms. In the claims in issue, however, the machine is limited to a single pair of arms. The new feature in this machine is the carrying around of the heel-blank on the arm of a rotated head from one accessible position where it can be readily attached to the heel-block to another position where it is nailed to the heal-seat of the shoe. A heeling machine so organized with a single pair of arms upon a rotary head, and carrying upon one arm a heel-blank and driving mechanism, and upon the other arm the top-lift and spanker devices, seems to possess the advantages over prior machines of simplicity.

accuracy, and increased efficiency.   Claims 23, 24, 42, 43, and 44 are
in issue.   It is sufficient to refer to claims 24 and 42:

"(24) In a heel-nailing machine, the combination of a pressure-head having
a wide opening extended through it, a shaft extending across said opening,
and a rotary head carried by said shaft and having two arms, loaded heel-
attaching devices, of the character specified, attached to one of said arms,
and a top-lift carrying, holding, and spanking device attached to the other
of said arms; the said rotary head being adapted to be turned so as to permit
the loaded heel-blank and the top-lift to be applied to their respective attach-
ing devices through the upper part of the opening in said head, or when
they are uppermost, and to permit them to carry said loaded heel-blank and
top-lift and to attach them successively when they are in their lowest posi-
tion, as and for the purposes described."

"(42) In a heel-nailing machine, as a means for attaching a heel-blank to a
boot or shoe and a separate top-lift to the attached heel-blank, a vertically-
reversible head having two arms, one of which arms is adapted to carry and
attach the heel, and is provided with nail-drivers and a nail-block arranged
on said arm so as to be movable toward and from it, and the other of which
arms is provided with top-lift-applying devices."

The important feature of claim 24 is the provision that "the said
rotary head being adapted to be turned so as to permit the loaded heel-
blank and the top-lift to be applied to their respective attaching devices
through the upper part of the opening in said head, or when they are
uppermost, and to permit them to carry said loaded heel-blank and
top-lift and to attach them successively when they are in their lowest
position, as and for the purposes described."   So, in claim 42, the
important part is "a vertically-reversible head having two arms, one
of which arms is adapted to carry and attach the heel, and is provided
with nail-drivers and a nail-block arranged on said arm so as to be
movable toward and from it, and the other of which arms is provided
with top-lift-applying devices."   It is contended that these claims are
void for want of invention in view of the prior art.   This contention is
founded upon the old McKay and National machines, to which ref-
erence has been made; and especially upon the prior Raymond patent
No. 329,951.   This latter patent is for an auxiliary device to the Na-
tional machine, which in no way involves the specific feature or mode
of operation of the patent in suit.   After the heel had been attached
to the shoe, it was customary to drive additional nails by hand for pur-
poses of ornamentation and more securely holding the heel-blank.
The purpose of this earlier Raymond patent was the construction of
an auxiliary device for doing this work automatically, as clearly ap-
pears from the specification:

"It is very common in manufacturing boots and shoes to first attach the
heel-blank by a gang or group of nails simultaneously driven, and to then
spank on the top-lift to the heads of the attaching-nails, or to other nails
which have been left projecting for the purpose of receiving it, and then by
hand to drive additional nails through the top-lift, either for the purpose of
more securely holding it in place to the heel-blank, or for purposes of wear
or ornamentation, or for all these purposes.   This last-named nailing has
always been done by hand after the removal of the boot or shoe from the
attaching-machine.   It is very desirable that means should be provided
whereby either holes should be made in the heel for these additional or
auxiliary nails after the heel has been attached, but while it is yet in the
heel-attaching machine, or that before the removal of the boot or shoe from
the machine, but after the heel has been attached, the additional nails be

automatically driven; and I have herein described means for accomplishing both these objects."

Although the different parts or elements which make up the claims in issue, such as a rotary head with arms and driving and spanking mechanism, were old, I do not find in the prior art the combinations covered by these claims. I find no suggestion in the prior art of the employment of a rotary head with two arms, one of which carries and attaches the heel-blank. By reason of this last feature the claims cover, in my opinion, new and patentable combinations.

The second defense is noninfringement. The defendants' machine has an oscillating head with two arms, one of which has appliances for carrying and attaching the loaded heel-blank, while the other has appliances for carrying and spanking on the top-lift. It cannot be denied, therefore, that, in its general features and mode of operation, the defendants' machine corresponds with the machine of the patent in suit. This defense rests upon the ground of the difference in the form of heel-attaching appliances. The heel-attaching device of the Raymond machine is described in claim 23 as "comprising a group of drivers at the end of the arm and a yielding heel-block attached to the arm, and into which the drivers extend." The defendants manufacture two forms of the Woodward heeling machine. In the first form the heel-attaching devices comprise a group of drivers at the end of the arm and a yielding heel-block attached to the arm, and into which the drivers extend; in the second form the spring-pressed heel-sleeves must be regarded as the equivalent of the spring-pressed heel-block of the patent in suit.

Decree for complainant.